# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **REGINAL LEDEAN LOPEZ,** }<br>}<br>**Plaintiff,** }<br>}<br>v. }<br>}<br>**MICHAEL J. ASTRUE,** }<br>**COMMISSIONER OF SOCIAL** }<br>**SECURITY,** }<br>}<br>**Defendant.** } | Case No.: 2:10-CV-0188-RDP |

## MEMORANDUM OF DECISION

Plaintiff Reginal Ledean Lopez ("Plaintiff") brings this action pursuant to § 1631(c)(3) of the Social Security Act, (the "Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") benefits under Title XVI. *See* 42 U.S.C. § 1383(c). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

### I.  Proceedings Below

Plaintiff filed her application for SSI on October 3, 2005, alleging disability beginning on December 1, 2004. (Tr. 41, 88-92). Plaintiff's application was denied by the Social Security Administration in its decision. (Tr. 41, 53-58). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 62). The ALJ conducted a hearing in Birmingham, Alabama on March 10, 2008. (Tr. 17-40). Plaintiff appeared in person at the hearing along with counsel and Dr. David Head, a vocational expert ("VE"). (Tr. 19). In the ALJ's decision dated May 22, 2008, he determined that there were jobs available in significant numbers in the national

economy that Plaintiff could perform considering her age, education, work experience, and RFC. (Tr. 51-52). Therefore, Plaintiff was not disabled under the Act and was not entitled to benefits. (Tr. 52). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision on November 30, 2009 (Tr. 2-4), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's review. 42 U.S.C. § 405(g).

Plaintiff was born on June 14, 1957, and was fifty years old on the date that the ALJ issued his decision, May 22, 2008. (Tr. 41, 52). Plaintiff has completed a tenth-grade education, and previously worked as a salesperson and a cleaner. (Tr. 25, 97, 112). Plaintiff alleges disability beginning December 1, 2004 due to arthritis in her lower back. (Tr. 93, 96). Plaintiff's treatment records are primarily from Cooper Green Hospital and Baptist Health System. An x-ray of Plaintiff's lumbosacral spine on March 7, 2005 from Cooper Green shows mild grade I spondylolisthesis of L4 on L5 and mild osteoarthritic change. (Tr. 147). Another x-ray of Plaintiff's lumbar spine on October 24, 2007 shows sclerotic degenerative changes in the facet joints, intact pedicles, and good gross alignment. (Tr. 224). Plaintiff has also been diagnosed with arthritis in her left knee, acute myofascial strain of the lumbar spine, high blood pressure, and obesity. (Tr. 143-44, 192, 201). Plaintiff's treatment records note stiffness, back, chest, shoulder, and knee pain, and a left lumbar curve. (Tr. 205, 209, 219).

Plaintiff was also examined by two consultative physicians. The Disability Determination Service sent Plaintiff to see Dr. Troy Kilpatrick on January 3, 2006. (Tr. 176-80). Dr. Kilpatrick observed Plaintiff entering the examination room without assistance, with normal station, gait, and coordination. (Tr. 178). Dr. Kilpatrick opined that Plaintiff had low back pain in the lumbosacral area with spondylolisthesis by x-ray diagnosis on record, hypertension, and depression. (Tr. 180).

On January 24, 2008, Plaintiff's counsel sent her to Dr. James Blake for a consultative examination. on January 24, 2008. (Tr. 229-36). Dr. Blake noted that Plaintiff had untreated depression, fatigue and weakness secondary to medication and disease state, a risk for falls and injury secondary to her chronic pain, chronic back pain, uncontrolled hypertension, chronic myalgias, and arthritis. (Tr. 231). Dr. Blake opined that Plaintiff needed to use a cane, and could only sit or stand one hour during the work day. (Tr. 232). He also opined that Plaintiff could never climb stairs, complete push or pull movements, bend, stoop, or reach, operate motor vehicles, work around hazardous machinery, or work around dust, allergens, or fumes. (Tr. 232).

## II. The ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1 *et. seq*. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. Absent such impairment, the claimant may not claim disability. Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). If such criteria are met, the claimant is declared disabled.

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. If the claimant is determined to be capable of performing past relevant work, then she is deemed not disabled. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.

In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(g), 404.1560(c). In making this determination, the Commissioner will use the Medical-Vocational Guidelines ("MVGs") in Appendix 2 of Part 404 of the Regulations. The MVGs will direct findings of "disabled" or "not disabled" when all of the claimant's vocational factors and RFC match a category listed in the Appendix. When the claimant's vocational factors and RFC do not match a listed category (the claimant is unable to perform the full range of work for her RFC), the ALJ will consider the testimony of a vocational expert. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

In the instant case, the ALJ determined that: (1) Plaintiff did not engage in substantial gainful activity since her application date of October 3, 2005; (2) Plaintiff has the severe impairments of

degenerative disc and joint disease of the lumbar spine, obesity, arthritis of the knees, and hypertension; and (3) Plaintiff has no impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 47-49). The ALJ stated the following about Plaintiff's RFC:

> [Plaintiff could] lift 15 pounds, sit for 6 out of 8 hours, stand and walk 4 hours out of 8, and could not sit/stand or walk more than 45 minutes to an hour at a time. She should have a sit/stand option and should not work around unprotected heights. She must avoid the hazards of moving machinery and is precluded from repetitive bending, operation of foot and leg controls, and operation of motor vehicles as part of her job duties.

(Tr. 49). Based on the testimony of the VE, the ALJ then found that "there are jobs that exist in significant numbers in the national economy" that Plaintiff can perform given her age, education, work experience, and RFC. (Tr. 51-52).

### III. Plaintiff's Argument for Remand or Reversal

The briefs and record reflect that Plaintiff makes the following arguments. First, although Plaintiff concedes that it is inappropriate for the court to address the issue, Plaintiff states that she believes that the ALJ's decision was an administrative error because the ALJ told Plaintiff's attorney in private that he meant to issue a favorable decision from Plaintiff's fiftieth birthday. (Pl.'s Mem. 8). Second, Plaintiff argues that the ALJ did not apply the proper legal standards in reaching his decision not to accord great weight to the opinion of Dr. Blake, and that his decision was not supported by substantial evidence. (Pl.'s Mem. 9-10). Third, Plaintiff argues that the ALJ incorrectly found that she could do light work, when the RFC assigned to her by the ALJ was actually for sedentary work. (Pl.'s Mem. 10-11). Plaintiff argues that this means that the ALJ must

have found her disabled at least from the time of her fiftieth birthday because the Medical Vocational Guidelines (the "GRIDs") are non-rebuttable. (*Id.*).

## IV. Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence or whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citation omitted)). If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Legal standards are reviewed *de novo*. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## V. Discussion

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for reversal. For the reasons outlined below, the court finds that the ALJ's decision was based on substantial evidence and the proper legal standards were applied.

**A.   This Court Cannot Consider Plaintiff's Argument That ALJ's Decision Was In Error Because He Told Plaintiff's Counsel Off The Record That He Intended To Find Disability From Her Fiftieth Birthday.**

Plaintiff begins her argument by suggesting that "the entire decision was an administrative error and that the ALJ meant to issue a partially favorable decision from Plaintiff's fiftieth birthday

because that is what he told her attorney prior to the hearing." (Pl.'s Mem. 8). Plaintiff then speculates as to why the ALJ meant to issue a favorable decision from the time of her fiftieth birthday – namely, that the GRIDs would mandate a disability finding from Plaintiff's fiftieth birthday if she was limited to sedentary work. (*Id.*) As Plaintiff concedes, there is no evidence of this in the record, and therefore it is improper for the court to address this issue. The court is unable to reverse the decision of the Commissioner based on speculation about what the ALJ might have done. *See Bloodsworth*, 703 F.2d at 1239 (judicial review of claims brought under the Act is "narrowly circumscribed" and involves scrutinizing the record to determine if the decision is supported by substantial evidence and the proper legal standards were applied).

**B.     The ALJ's Decision To Accord Less Weight To The Opinion Of Dr. Blake Was Proper.**

Plaintiff also argues that the ALJ's decision not to accord great weight to the opinion of Dr. Blake was not supported by substantial evidence. (Pl.'s Mem. 9-10). This argument fails because the ALJ gave several reasons for discounting the opinion of Dr. Blake, and these reasons were well supported by substantial evidence – *i.e.*, objective medical evidence, as well as Plaintiff's treatment records.

The regulations require the ALJ to evaluate the medical opinions in each case. *See* 20 C.F.R. § 416.927(d). However, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987). There is a non-exhaustive list of factors given in the regulations for the ALJ to consider when weighing medical opinions. 20 C.F.R. § 416.927(d). These factors include: whether the expert has had a chance to examine the claimant; whether a treatment relationship exists; the extent to which the opinion is supported by the evidence and explained by the expert; how consistent the opinion is with the medical record as a whole; and

whether the expert is a specialist. *Id.* An examination of the factors that the ALJ gave when discounting Dr. Blake's opinion shows that he considered all of the factors that were relevant to the present case. Specifically, the ALJ gave the following reasons for discounting Dr. Blake's opinion: (1) Dr. Blake was an examining physician, not a treating one; (2) Dr. Blake's opinions were not supported by the great weight of the medical evidence; (3) Dr. Blake's opinions were largely based on Plaintiff's subjective complaints; and (4) a person with the limitations suggested by Dr. Blake would require custodial nursing care. (Tr. 51).

Substantial evidence in this case supports the reasons referenced by the ALJ for discounting Dr. Blake's opinion. Dr. Blake's opinion is based, at least in part, upon the consideration of an impairment that Plaintiff did not establish. The ALJ noted that although Dr. Blake stated that Plaintiff had a severe lumbar curve in her spine at the iliac crest, the record does not show a persistent diagnosis or treatment of a lumbar curve.[1] (Tr. 48, 231). Furthermore, none of Plaintiff's radiological reports show a lumbar curve. Plaintiff had x-rays of her lumbosacral spine in March 2005 and September 2006, and neither reviewing physician reported a severe lumbar curve. (Tr. 147, 226). Dr. Morgan Eiland also reviewed x-rays of Plaintiff's lumbar spine in October 2007 and stated that Plaintiff's "gross alignment is good." (Tr. 224). Because Dr. Blake's diagnosis of a severe lumbar curve was contradicted by objective medical evidence in the record, the ALJ's decision to accord less weight to the medical opinions that were based upon this diagnosis was supported by substantial evidence.

---

[1] There is only one other mention in the medical records of a lumbar curve, and that is in a physical therapy treatment record from Cooper Green in October of 2006. (Tr. 219). While the ALJ did not specifically reference that record, it is important to note that physical therapists are not among the list of acceptable medical sources that a claimant can use to establish an impairment. *See* 20 C.F.R. § 416.913(a).

8

As the ALJ noted in his opinion, the remainder of Dr. Blake's opinions are similarly unsupported by the evidence and are based on Plaintiff's subjective complaints. (Tr. 50-51; *see Crawford*, 363 F.3d at 1159 (affirming the decision of the ALJ discounting a treating physician's opinion when it was "based primarily on [the plaintiff's] subjective complaints of pain")). The opinions offered by Dr. Blake included the following: Plaintiff requires a cane to ambulate even minimally in a normal workday; she can only sit for one hour in an eight hour work day; can only stand and walk combined for one hour in an eight hour workday; and that the side effects of her medication would render her unable to function productively.[2] (Tr. 245-47). Although Dr. Blake stated that Plaintiff could never climb stairs, Plaintiff testified that she lived in an upstairs apartment. (Tr. 22). Furthermore, Dr. Kilpatrick noted that in his consultative examination, Plaintiff entered the treatment room "without assistance, and with a normal station, gait and coordination." (Tr. 178). The ALJ found evidence in the record that contradicted the opinions of Dr. Blake and chose to discount the latter. On review, this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *See Bloodsworth*, 703 F.2d at 1239. Because the ALJ properly considered the factors listed in 20 C.F.R. § 416.927(d) in weighing Dr. Blake's opinion, and the examination of those factors supported the determination that Dr. Blake's opinion should be given less weight, the ALJ's decision applied the proper legal standards. It was also supported by substantial evidence.

---

[2] Although Dr. Blake noted on question three of the "Clinical Assessment of Pain" questionnaire that side effects of Plaintiff's medication would render her unable to function at a productive level of work, on an identical question presented on the "Clinical Assessment of Fatigue/Weakness" questionnaire he circled a different answer, indicating that side effects of the medication would limit her effectiveness because of distraction, inattention, and drowsiness. (Tr. 246-49). Dr. Blake's opinion answers are therefore not only inconsistent with the remainder of the treatment record, but are also internally inconsistent.

C. **The ALJ's Decision That Plaintiff Was Not Disabled Under The Medical-Vocational Guidelines Was Supported By Substantial Evidence And The Proper Legal Standards Were Applied.**

The ALJ found that Plaintiff's RFC allowed her to perform the full range of sedentary work and a reduced range of light work. (Tr. 50-52). Plaintiff argues that the VE's answer to the ALJ's hypothetical question regarding the types of jobs available to a person with this RFC limited her to the performance of sedentary work, and thus that the GRIDs mandated that the ALJ find Plaintiff disabled from her fiftieth birthday. (Pl.'s Mem. 10-11). This argument fails for two reasons: (1) the ALJ did not find that Plaintiff was limited to sedentary work; and (2) no rule listed in the GRIDs mandated a finding of disability for Plaintiff.

1. **The ALJ Did Not Limit Plaintiff to Performance of Sedentary Work.**

In her brief, Plaintiff contends that the VE limited her to performance of sedentary work, and thus the ALJ should have found her limited to sedentary work despite his finding that she was capable of light work. (Pl.'s Mem. 10-11). This argument misanalyzes the findings of the ALJ and the nature of the exchange between the ALJ and the VE. In fact, the ALJ found that Plaintiff was capable of performing some light work. (Tr. 49). Specifically, the ALJ stated that Plaintiff had the RFC to "lift 15 pounds, sit for 6 out of 8 hours, stand and walk 4 hours out of 8, and could not sit/stand or walk more than 45 minutes to an hour at a time." (Tr. 49). This RFC is greater than the RFC for sedentary work, but does not meet the full requirements of light work. *See* 20 C.F.R. § 416.967; SSR 83-10, 1983 WL 31251, at *5-6.

During the hearing, the ALJ asked the VE if there were any jobs that a hypothetical individual with this RFC could perform, and if so, to identify representative examples. (Tr. 37-38). The VE answered affirmatively, and stated that "[t]here are unskilled entry level sedentary jobs that do allow

standing at the worker's option." (Tr. 38). Although the VE listed sedentary jobs as examples in his answer, the ALJ never *asked* the VE to assign Plaintiff's RFC. Instead, the ALJ told the VE to *assume* the RFC that he assigned to Plaintiff, which fell in between the RFCs for light and sedentary work. Furthermore, the ALJ asked the VE to list "representative examples" of jobs that someone with Plaintiff's RFC could perform, and did not ask the VE to give an exhaustive list of these jobs. (Tr. 37-38). As such, the VE's answer that there were sedentary jobs available to Plaintiff, does not, as Plaintiff argues, limit her to performing sedentary work.

### 2. The GRIDs Do Not Mandate A Finding of Disabled In Plaintiff's Case Because Her RFC Does Not Match A Listing on the GRIDs.

Plaintiff argues that the decision of the Commissioner must be reversed because the GRIDs mandated a finding that she was disabled from her fiftieth birthday. (Pl.'s Mem. 11). It is true that the GRIDs mandate a finding of disabled for a claimant with limited education, unskilled or no previous work experience, that is approaching advanced age (50-54), if that individual is limited to sedentary work. 20 C.F.R. Pt. 404, Subpt. P, App. 2 §§ 201.00(g), 201.09. As discussed above, the ALJ did not limit Plaintiff to sedentary work, rather, her RFC allowed her to perform a range of work in between sedentary and light work. When a claimant's RFC falls between the ranges of work discussed in the rules, the GRIDs are not conclusive. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(d); *see also id.* § 200.00(a) ("Where any one of the findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled."). Because the ALJ's findings of fact in this case do not fully match the criterion of the GRIDs, Plaintiff's argument that the GRIDs mandate a finding of disability from her fiftieth birthday is simply off the mark.

## VI.  Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination.  The Commissioner's final decision is, therefore, due to be affirmed and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this    14th    day of April, 2011.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE